Our next case on the call is Agenda Number 10, Numbers 105-517 and 105-518, Consolidated. Sagamon County Sheriff's Department v. Donna Feleccia. Ms. Hughes will be presenting most of the argument. I just want to take a couple of moments to try to put this case in a broader perspective. In 1970, the voters of the state of Illinois adopted its Constitution. That Constitution was unique in that the Bill of Rights contained three provisions to prohibit discrimination. Not only did it prohibit discrimination by governmental bodies, it also extended that protection to private employers. That was unique. The citizens of the state of Illinois said they wanted to eliminate discrimination. In 1979, the Illinois Human Rights Act was adopted to implement and enforce those constitutional provisions. One of the stated purposes of the Act was to free citizens of the state of Illinois from discrimination. This case involves the longstanding position of the Human Rights Commission that when sexual harassment is committed by a supervisor, the employer is automatically liable. That interpretation not only is consistent with the wording of the statute, it is also consistent with the constitutional provisions and consistent with the stated purpose of the Act. I would also like to point out that the appellate court decisions affirming the Human Rights Commission position is that the statute has never been amended. The Act has been amended several times. It was amended in 1991 to further protect citizens from sexual harassment when the legislature reduced the number of employees that had to be employed to state a cause of action from 15 to 1. Two years ago, three years ago, it again amended the Act. But it has never amended the Act to refute the consistent, longstanding position of the Human Rights Commission on sexual harassment perpetrated by a supervisor. And now Ms. Hughes will present the rest of the argument. Counsel, can I ask one question? Yes, Your Honor. Is it of any significance whether there's a direct relationship between your client and the supervisor? I stated that poorly. Okay, do you mean is there any significance if it's the direct supervisor? It's not her supervisor. Not her supervisor?  Well, it's a big office. But it's a supervisor. It's a big office. He is clearly a supervisor, but he is not carrying on the roles as her supervisor. Well, I submit to you, Your Honor, that if that supervisor gives, in this case, the woman an order, she's going to follow it. Okay. Even though it's not my direct supervisor. My question is, is that the issue in this case, as I poorly stated it, that it has to be the supervisor of the claimant? That is what the Fourth District said, Your Honor. Right. And that's the key issue. And it overturns longstanding precedent and practice of the commission. Your position is it clearly does not have to be as long as the deputy is a supervisor in the sheriff's office. That is correct, Your Honor, because the supervisor, in a very real sense, is the employer. And if this supervisor walked over to Ms. Felicia and told her to do something, given his position, she would feel compelled to do it. Is there any case that has directly held on this particular issue? Well, Your Honor, now we're into a question of dicta, and I think Ms. Hughes can address that. The appellate courts have been very clear in their statements that it is any supervisor. And it would be our position that that is consistent with the act, the purpose of the act, and with the purpose of the constitutional provisions. Ms. Leahy, what is the standard of review here? Do we give deference to the commission? Yes, Your Honor, because of their position. And I think Ms. Hughes, who represents the commission, can further address that. And, yes, this is an agency, quasi-judicial agency, that has consistently, since 1979, held that when it's a supervisor who's doing the harassing, the employer is liable. And it's proactive, Your Honor. I mean, the purpose of the Human Rights Act was to be proactive, so employers would take steps to see that this didn't happen. I think the word is to eradicate discrimination in the state. I think that's the word in the statute. So I'll let Ms. Hughes further address that. Good morning, Your Honors. My name is Jan Hughes, Assistant Attorney General for the Illinois Human Rights Commission. The legislature has declared that it's a public policy of the state to prevent sexual harassment in the workplace. Because of that, the statute provides that employers violate the act. It's a civil rights violation for the employer or their agent to violate the act. And it also says that an employer will be responsible. Yes, I'm sorry. I just want to pick up where I think Justice Garmon left off. Yes. Because I think your co-counsel said you would talk about it. Has there been any reported case from any jurisdiction that has imposed strict liability in this situation? Because that's what we're dealing with here, strict liability for the employer. That is the issue. Right. So has there been any jurisdiction that would impose strict liability in this situation, whereas Justice Fitzgerald said the person was a supervisor but not a supervisor of the victim of the harassment? Your Honor, the only case that I could find that dealt directly with the facts that we have here was an administrative decision from the state of California, and that's my brief. And if you recall, I believe that it was in the appellate court decision that the appellate court was very concerned about being the first case, more or less, in the country to hold this way. And they asked us to research the issue of other jurisdictions, and the parties did and submitted supplemental briefs. And I believe that the appellate court has mentioned that. And I know that both counsel for the appellee and Ms. Leahy and myself did extensive research. And there just isn't anything out there. The federal courts, however, have specifically considered the question and held that strict liability is imposed only when the harasser is the victim's supervisor, right? That is correct. And just so we understand, the victim is not without recourse for the employer. I mean, the situation is that there is recourse for the victim from the time that the employer knows or should have known of the alleged harassment. Recourse in that? They can still sue the employer, only not find the employer strictly liable just on the basis of it was a supervisor of the company. There would be a burden of proof placed on the complainant. I'd like you to address just for a minute, in light of all that, some of the public policy arguments made by the employer. I think he mentioned Walmart and a number of, you know, that are all over the country. I mean, you can take one store, but I mean that they're all over the country. And, you know, one supervisor would make the employer who certainly wouldn't have to have knowledge under a strictly liable standard, but would that be just in light of it all, especially when there is recourse for the particular victim of the sexual harassment, be it not strictly liable? It would not be unjust to impose strict liability on a large employer. First of all, let's face the reality of the case, which is these fact patterns just don't arise very often, obviously. There hasn't been another case in the history of Illinois or in other states that we could find that deal with this. So there were, you know, kind of a parade of horrors in the amicus brief about this, and it's just not going to happen. Second of all, another reality, I believe, is that sexual harassment, and especially a hostile work environment case, can only happen when there is some connection between these two employees. And so, again, I think that that's just the reality of the case, that there has to be some proximity so that the supervisor can, in fact, create an intimidating and hostile work environment. And so the fact that a Walmart, for example, may have employees all over the state and supervisors all over the state and all over the country, generally sexual harassment is going to come down to a supervisor harassing someone that he supervises, or a supervisor, like in this case, who is in the same building as the employee that's being supervised. So let's just not be afraid of this. Is there any significance to the fact that there is a certain nexus between the supervisor and the employee under that supervisor, and the fact that there's no question in that situation that the company can be strictly liable, ergo that that supervisor is imposing some type of authority, company authority, over that particular person, versus a supervisor from one department that has no company, real company authority, over a supervisor from another department or another area? Is there any significance to that as to why one might be clearly, strictly liable, and at least there's a question in the other? There is no significance to that, Your Honor. And I believe that the appellate court found that that was significant. The problem with that reasoning is that the Human Rights Act talks about harassment where conditions in terms of employment can be affected adversely by the harasser. And that would be in the typical situation of the victim's supervisor harassing her. But that decision and your question, I believe, ignores that there is the third possibility under the Human Rights Act of the type of harassment, and that is making a hostile work environment case. And so there is no significance. We don't need in a hostile work environment case hours changed, work increased, promotions denied, and that sort of thing. That is bad, but it's equally bad when an employee must work in an intimidating environment just for the sake of that. That alone, I think if you want to look at it that way, working in an intimidating hostile environment day after day and trying to be a good employee is a much an adverse aspect on the terms and conditions of employment as those very, the examples that we can think of quite easily, denying a promotion, that kind of thing. But the Human Rights Act and appellate court cases in Illinois have recognized that there are quid pro quo type of harassment and the hostile work environment. And they should not be treated differently depending on who is the harasser. Counsel? Yes. The word strict liability isn't in the statute, so how do we reach that to find that the legislature intended to have the employer liable? Your Honor, the cases including this court in the Geis case have found that the act does impose strict liability. And I don't believe that the appellee has questioned that. There is no request for cross relief, and the appellate court in fact in this case recognized that strict liability exists. And all of those courts have recognized that strict liability exists because of the wording of the statute, the plain language of the statute, which says that, again, an employer will be responsible for sexual harassment by non-employees, non-managers and non-supervisors if the employer becomes aware of the conduct and fails to take reasonable corrective action. So the plain language comes about when you're looking at more or less the opposite of that. If someone is a non-employee, the FedEx delivery person that comes to the job, or if someone is a manager or supervisor, then the employer is strictly liable. And Illinois courts have been clear about that. The Geis case, which came from this court, the appellee I believe suggests, well, that was dicta, and this court should. But Geis was, where the supervisor was the direct supervisor of the employer. That's right. And again, that goes back to the fact that this is a unique, I think interesting, unusual case. And that wasn't the case there. But nonetheless, the Geis court said that there is strict liability for harassment by supervisory personnel. That was the language that was used. That was not dicta, because in that case, the plaintiff brought a negligent hiring suit, and the court had to reach whether or not that was cognizable in the circuit court. And it found that because the Human Rights Act would be the place for that complaint to be lodged. So the court did have to reach the issue in order to resolve the case. Ms. Hughes, the section you, or the language you referred to that you quoted or paraphrased, it's the 2-102 paragraph D? Correct. And again, as Justice Burke said, there's no reference to strict liability. I mean, I read it as liability, but don't you still have to prove two prongs? One, the employer had knowledge of the harassment, and secondly, failed to take corrective actions? I mean, and then liability is imposed? No, Your Honor. Under the plain language of the Act, it says if the harasser is a non-employee, non-manager, or non-supervisor, then there is that burden of proof. Because of that language, then we look at a supervisor or a manager. The complainant does not have the burden of proof, and that's where courts have said that there's strict liability. What this case is about is saying the strict liability also applies when the supervisor or manager harasses someone that he does not supervise. And again, courts in Illinois have been very clear and correct, I believe, that strict liability is established under the statute. I don't believe that the case before this court asks whether the statute does impose strict liability. I believe that that's settled. All right. So the way you're reading it in terms of the phrase about non-supervisory employees, this individual who is not the direct supervisor, because of that relationship, you're not saying he falls under the non-supervisory employee category? That's right, Your Honor. And that's based on the fact that the statute talks about the relationship between the employer and the harasser, the supervisor. It does not talk about the relationship between the harasser and the victim. And the appellate court, I believe, when it felt the need to look at the dictionary definition of supervisor, kind of strayed from what that plain language is. The appellate court said, well, a supervisor hires and fires and those sorts of things. Well, it was undisputed in this case that Sergeant Yanner was a supervisor. That was never in dispute. But what the appellate court, it went one step further and said given those attributes of supervisor, Sergeant Yanner did not have those vis-à-vis the victim in this case, Ms. Felicia. But we believe that that is imposing in the Human Rights Act a condition that the legislature did not intend. Certainly if that's how they wanted supervisor to be understood, they could have included a definition in the act that the appellate court suggested. But it did not. And the legislature, it could have in any number of ways. And Section 2102D itself could have limited it in the way the appellate court did. And it did not. And this court I think has a long history of not going astray from the words that the legislature uses and imposing the plain language on litigants. And we are just asking the court to do that here. Can I ask you a question about the Seventh Circuit case? I can't read the name of it because I can't read my own handwriting. Is it Hill v. Borden Electricity? I'm sorry? The Seventh Circuit case? Yes. The statements made in that case is that an individual is not a supervisor unless he possesses the authority to directly affect the terms and conditions of the victim's employment. Do you simply disagree with that statement or do you read that statement consistently with your position? We believe that the legislature disagreed with that statement. The legislature did not put any such limitation in the act. And certainly this court and others have recognized that Title VII and federal courts interpretation of Title VII is different. And the federal law is not in lockstep with Illinois law. And what this court needs to do is look at the Illinois law. It does not need to consider what the federal law says because the statutes are simply different. The history of the cases interpreting those statutes are different. And the courts in Illinois have been very clear that strict liability exists under the act. And again, what we are trying to, what the commission felt I don't think I was talking about strict liability or disagreeing with that. I'm sorry? I'm just talking about whether the supervisor has to have a certain level of control over the complainant. Again, we say no, and that would go back to the language of the act. That in hostile work environment case, we don't have to have a supervisor threatening an employee with denial of a promotion or more work or fewer hours or less pay, that kind of thing. What we need under the act is looking at the relationship between the employer and the harasser. And if the harasser is a supervisor or manager, the strict liability will apply if that person is creating a hostile work environment for the victim. So it would be a disagreement with those cases based on the different statutes involved. Thank you. Counsel, you may proceed. My name is William Hardy. I represent the appellee, the Sangamon County Sheriff's Department in this case. Your honors, I think the questions that you've posed to counsel for the appellants get to the very heart of the issue here. The key inquiry here is the relationship of the supervisor to the employee. And that relationship, the exercise of the authority given by the employer to the supervisor that allows the supervisor to, in essence, perpetrate the sexual harassment, change the conditions of employment, or intimidate the employee. That's what causes the imposition of liability. That's what the Title VII cases have said for years and years and years. Now, I understand that we have these Illinois appellate court decisions. And we have the Geist decision, which I think is dicta. But it is abundantly clear that no court in this country has gone as far as the commission wants this court to go in this particular case. And when I read the plain language of the statute, like you, Justice Burke, I do not see that as a violation. I do not see the words strict liability in there. As we point out in our brief, and I think as one of the amicus pointed out, it's only by a negative inference that courts have said that there's strict liability. And I think that one of the reasons that the court has applied strict liability or vicarious liability in the case of a supervisor who actually sexually harasses an employee under his or her control is because of the agency principles that are discussed in all these federal cases. These cases which have developed into this rule that you have to have a direct supervisor or you have to have a supervisor with successively higher supervisory authority. They have to be able to affect the terms and conditions of the employment. Now, Ms. Leahy said here today, this morning, that, well, if Mr. Yainer had given her an order, she would have had to follow it. Your Honor, there's no evidence whatsoever in the record to support that. The commission made a specific factual finding in this case that Mr. Yainer not only did not have any supervisory authority over the complainant, he did not have the ability to affect the terms or conditions of her employment. And the harassment that we're talking about here, the alleged harassment we're talking about here, had nothing to do with that. We're not talking about, and we can talk about quid pro quo versus hostile work environment. Either way, a supervisor is aided by the agency relationship when that supervisor imposes that some kind of, asks for sexual favors or whatever on a subordinate employee. And that's what these cases have been talking about. When I view this language, and I want to read it because I think it's very important, and it's also very important, that the court consider, if the court's going to adopt the argument that this negative inference should be read to mean that in cases involving all supervisors, regardless of the level of control over the employee, there's strict liability. If that's going to be the reading, the only way to read the statute is by a negative inference. And that is, in essence, an aid to statutory interpretation, just like the commission's view of it. If the commission says in this case, well, we view this, we think that there should be strict liability in all cases involving supervisors, this is really the only case that's come before the commission that's on point on someone who had absolutely no supervisory control. I mean, there are other cases where supervisors were aware of things and so on and so forth. But this case is unique. But if we're going to do that, look at those legislative aids to statutory interpretation. In essence, what you're saying is that there's an ambiguity. I mean, that's what they're saying, I think, through this negative inference. Mr. Hardy? Yes. Is it true that the state could impose a stricter rule, definitive rule, on liability if it so chose than the federal rules? Well, I think the General Assembly has the authority to. And so doesn't the question become then what was the legislative intent with regard to this and what they've said in their statute? That's part of it, yes. And let's go to the statute. Here's what the statute says. It is a civil rights violation for any employer, employee, agent of any employer, employment agency, or labor organization to engage in sexual harassment. The legislative history relating to that is very interesting, which I'll get to in a moment. And it goes on, provided that an employer shall be responsible for sexual harassment of the employer's employees by non-employees or non-managerial and non-supervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective action. First, it says nothing about strict liability. It says nothing about who is considered a supervisor. When you look at the legislative history, and I think also the appellate court appropriately applied the common, ordinary understanding of these terms. I mean, a supervisor has to have the ability to control the person's work environment in order to be a supervisor. But when you consider that in context with federal law and the cases that have been developing for decades and the cases that were in fact in existence in 1983 when the General Assembly adopted the amendment that we're talking about here, it's clear that there has to be, that the supervisor has to be aided by his supervisory relationship. There has to be some causal link there. If there isn't some causal link, there's no legal basis for imposing the liability. It's in essence a question of agency liability. But getting to the specific legislative intent here, there's a point that I have to make about the reply brief, and it gets right to this issue. In the commission's reply brief on page 17, they make an argument. They say, in response to our legislative history argument, the commission says, in fact, Representative Curry, who sponsored House Bill 235, said that the bill tracked regulations of the Federal Employment Opportunities Commission, EEOC. At that time, the EEOC guidelines provided that employers were strictly liable for acts of their supervisory personnel. Then the commission cites the Meritor v. Vinson case, which we cited, and another case from the Seventh Circuit, the Horn v. Duke case, and 29 CFR 1604.11c. Then the commission goes on to say, the Vinson court only later refused to give effect to the regulation, and in Farragher v. Ellerth, the court created a presumption for quid pro quo cases, and then concludes with, accordingly, the fact that House Bill 235 was influenced by the EEOC's strict liability regulation in effect at the time, is consistent with the commission reading of Section 2-102D as providing for strict liability. Well, it's not, that state, that argument on that page is, if you're talking about a supervisor who has direct control over the personal affairs and being harassed, it's accurate. But in the context of this case, it's not accurate at all. When you look at... Mr. Hardy, that's really the point, isn't it? I mean, if this court finds, I mean, I understand your statutory construction argument. It says non-supervisor employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures. That's what I was discussing with Ms. Hughes, that there is still liability in this case that could be directed against the employer, but they have to know about the action. So doesn't this case really hinge on what this court believes the definition of supervisor is? If the supervisor relates to a supervisor that is merely appointed a supervisor by the company, for example, that's one thing. But if supervisor means supervisor over the particular victim, that's another, right? It is, exactly, Your Honor. And if we feel that it's supervisor over the victim, wouldn't that be enough for you to prevail? Yes, I believe so, and that's in essence what the federal courts have said for years. There is a factual finding in this case that he had no supervisory authority, and the evidence is undisputed on that. It's also undisputed, the appellate court says this, that under Title VII we wouldn't be liable. And those are cases... I don't know if that's your perspective, but in a case in which it is a supervisor over the victim, you know, directly over the victim, that this statute would not provide for strict liability in that situation? Well, again, that's not the issue before the court. But I think based on my understanding of the legislative history of this statute and the federal law, the General Assembly really intended, when you look at the legislative history, to put us not lock, stock, and barrel in line with federal law, but at least in terms of this issue, I think when you look at Representative Curry's comments and the other comments, and you look at the law that was in existence at the time, I think that the law should be the same as in federal court. That if you have a supervisor who takes a tangible employment action against an employee, well, then there's strict liability, vicarious liability. There's no affirmative defense. The reason for that, as the courts have explained in many, many cases from Vinson, Ellerth, and cases prior to those, the Courts of Appeals cases, the reason is because of the restatement of agency, that the employer is in essence, the actions of the supervisor in essence merge with the employer when the supervisor is using the supervisory authority given by the employer to affect the terms of the employment, such as firing somebody or whatever. The courts have said under those circumstances there's strict liability. Mr. Hardy, the problem, though, that I see with that is that that would exclude the situation where the nonsupervisor, but the supervisor is in this case in the same building, who could provide a terrible work environment for the woman under all kinds of circumstances, and he would get off and the employer would get off because he's a direct supervisor. The employer would not get off, Your Honor. I mean, you still have the question. If the employee reports it to his or her supervisor, and then that action is not, and then remedial action is not taken, reasonable. Wasn't that what she's arguing, that the remedial action wasn't enough? Well, that's what Ms. Leahy argues in her brief. But I thought we were talking about the legal issue of strict liability. You know, on the question of, that's a separate issue, Your Honor, I guess is my point. What she is, what Ms. Leahy is saying in her brief is, look, if you find that Mr. Hardy is right on the issue of strict liability, you should take a look at this issue of reasonable corrective action, which I'd be happy to respond to questions about if you have questions about it. The court, you know, the fact of the matter is, the only thing that was reported to the Sheriff's Department was this letter. You know, she was asked about anything else, and she said, well, no, there were no other problems. And, you know, upon finding out about the letter, they launched this extensive investigation, so on and so forth. So they took reasonable corrective action. But getting back to the strict liability argument in this legislative history, I don't want to get away from this point because when you look at this regulation that the commission is referring to, first, the EOC regulation, 160411C, wasn't even in the bill at the time Representative Curry made those statements. The language Representative Curry was referring to in her comments on March 23rd was the definition of sexual harassment, which is contained in 29 CFR 160411A. That is carefully tracked in Section 2-101E. The General Assembly basically adopted the federal regulation. The General Assembly did not, however, at that time, have any language in there relating to Section C about supervisors. When she made those comments, the bill, all it said was, it is a civil rights violation for any employer, employee, agent of any employer, employment agency, or labor organization to engage in sexual harassment. The second part of the statute was added by the Senate, and the legislative history makes it clear that the reason for that, the reason for adding that language, was because the Illinois Chamber of Commerce had a concern about harassment among coworkers, and they wanted to make sure that if you have harassment among coworkers, it's not a violation if the employer doesn't have knowledge and doesn't have the opportunity to take action. And I would urge you to look carefully at the entire 160411C as it existed at the time, because really what they did was they took portions of D and E, which deals with non-employees and coworkers. They really didn't put anything in there about C. C at the time did talk about how applying general Title VII principles, an employer is responsible for the acts of its agents and supervisory employees, et cetera, et cetera. But then at the end of that, and this is in the Vinson case, this is a key language, it says the commission will examine the circumstances of the particular employment relationship and the job functions performed by the individual in determining whether an individual acts in either a supervisory or agency capacity. So even the federal regulations, which the Illinois General Assembly didn't adopt that portion of it, even at that time, the EEOC was saying, look, you've got to look at whether the person was acting within his capacity as a supervisor at the time. And, you know, the Vinson court, when they looked at that, they cited that very section for the proposition that vicarious liability is inappropriate where a supervisor has no authority over an employee because they work in wholly different parts of the employer's business. You know, these cases, the Vinson case, the Horn case, the Ellerth case, the Farragher case, when you look at the cases, it's very clear that it's not the label of supervisor that results in vicarious liability. It's the, as the court put it in Vinson, it's because the supervisor is making or threatening to make decisions which affect the employment status. And later, the court, and in the Vinson case, the court cited the restatement second of agency, which has been discussed in many Title VII cases, and made it very clear that what we're talking about here is agency law. You know, for years, the federal courts have been struggling with this. They've been struggling with these agency principles. Some courts have, you know, said for a while that a supervisor is basically acting within the scope of his employment when he commits harassment or discrimination because the supervisor's activities or purpose, even if misguided, is in some way in part to further the employer's business. In the Horn case, for example, the court said, well, We think that the employer was acting within the scope of, or that the supervisor was acting within the scope of his employment, as long as the tort complained of was caused by the exercise of the supervisory authority. It's always been that link that creates the vicarious liability, or the strict liability, if you will. That's been a resounding principle in case after case after case under Title VII, even before sexual harassment was added to the mix. So I guess what I'm saying is, look, there has to be some legal basis for finding strict liability. And I don't see it in the statute. It's not there, and the legislative history doesn't support it. The legislative history, in fact, says exactly the opposite. Now, to respond to a few of the questions, a few of the issues raised by counsel during oral argument, the Geis case, well, let me talk about Illinois law for a moment. The Geis case, as I recall, this court cited the Green Hills Country Cup case. That's a Fifth District case. That's really the only case where the court addressed the issue in a case involving a direct supervisor. In that case, the court said, first, Section 5-102D wasn't even in effect at the time. But they said it doesn't matter because the law already was that there's strict liability under these circumstances. Now, the only basis for concluding that would be based on the developing case law in many jurisdictions, which applied general agency principles to find the employer vicariously liable. The key here, I think, is when we're talking about supervisor liability, is not the second part of the Section 2-102D. It's the first part. The question is whether there is vicarious liability because of the agency relationship. And that's where the federal cases are very clear and where it's very important that this court consider those cases. That's the public policy. I mean, it makes a lot of sense to find an employer liable when the employer gives the ability to sexually harass an employee to a supervisor. And that supervisor then exercises that authority to extract sexual favors. It makes no sense to apply it in a case like this where you have someone from a totally separate department who has no supervisory control whatsoever and is not in any capacity acting as a supervisor when he does the things that he did. Now, I'd like to address your question, Justice Burke, on the issue of corrective action. There wasn't really very much said about that during oral argument. But the... Counsel, could you just take a minute or two and wrap it up, please? Sure. Am I out of time? I'm sorry. I think so. The only point I would make is that we addressed this in our reply brief to some extent, to a large extent. But all of the arguments that are raised by Ms. Leahy, you know, the gossip, rumors, those things are not even a part of this case. That aspect of the case was dismissed. What we're talking about here is the letter. That's the only thing the department knew about it. There's no question about that. The department launched the investigation. They did everything that they did. And, you know, I don't know how you can say that that's not reasonable corrective action. So we would ask, Your Honors, that the appellate court's decision be affirmed. Thank you. Thank you, Counsel. Your Honors, most of what Mr. Hardy was talking about, I think, I'm not quite sure, but it sounds like he doesn't like strict liability at all. It seems like he goes back and forth a little bit, and I was somewhat confused in his brief, too. But I want to remind the court that the appellate court, like other courts, found that the act in general, and put aside for the moment the facts of this case, does establish strict liability. And, again, there was no request for cross-relief on that issue. Certainly this court on its own could revisit the Geis case, but there's no need to. The plain language of the statute provides for strict liability, based on the fact that it is only when a non-manager, non-supervisor, and non-employee harasses, do we need to impose a burden on the complainant to show what the employer knew and what actions the employer took. So strict liability, at least the commission's briefs, went on the basis that strict liability is the law in Illinois. The simple question, or narrow question, in this case, obviously, is a supervisor who harasses someone he does not supervise, does strict liability apply to him, too? And there is no basis to question the strict liability in that case. The plain language of the statute, which we heard very little about Illinois law in Mr. Hardy's argument. This is not a federal case. You are not being asked to look at Title VII or to disagree or agree with the federal cases. This case is only about the Illinois Human Rights Act and the reading of the act given by the commission. Federal cases don't always agree with Illinois cases. Illinois cases don't agree with federal cases. Illinois cases have said more than once that federal law is different, and it should be different. The legislature in Illinois has established the Human Rights Act, and it is irrelevant, as courts have held, notably the Webb case. In this case, and Geis also made the distinction between federal and Illinois law. So please don't base this case on what federal courts have said, because those cases are interpreting federal law. Well, that's true, of course, but the federal cases are the ones that have addressed specifically the word supervisor in this context. And that's whether it's a supervisor generally or a supervisor over the victim. And they have interpreted it as to be a supervisor only over the victim for agency principles, which I think Mr. Hardy did indicate that he believed there is strict liability in the supervisor over the victim area basically on agency principles. For hostile work environment. And they're not precedential, but they're persuasive, and the only thing we have in the context of what exactly does supervisor mean. Is that true? Federal law? No. I just don't see that you need to look to federal law to determine what a supervisor is. Is there any other case, any other jurisdiction, Illinois case that said in the context of a supervisor who was not the supervisor for the victim of the harassment that strict liability would apply? Is there any case anywhere? No, Your Honor, except for the ones that I mentioned in my brief, which is an agency decision and a federal decision in Massachusetts applying federal law. I'm sorry, applying Massachusetts law. And the only point I'm trying to make is the federal court has determined that strict liability does attach in the supervisor over the victim case. I don't believe that it's applied, that it's made that statement in relation to specific facts of a case. I think if it had, our burden in our supplemental briefing in the appellate court would have been much easier. I think that if the federal law has said that, and it has said that for hostile work environment cases, there is no strict liability whatsoever. That is not the case in Illinois. But if the federal courts had examined a fact situation like ours, again, I think we both would have been discussing that case at length in our brief. So federal cases have said that strict liability does not apply in hostile work environment cases. And federal cases, if they have gone on to say that strict liability would not apply if the person was not the supervisor, that is not the case. If the harasser is not the victim's supervisor, I'm unaware of any case that they applied that to the facts of the case. Is it true that the federal courts have uniformly concluded that an individual is not a supervisor unless he possesses the authority to directly affect the terms and condition of a victim's employment? I would not disagree with that. But I don't think that they have said it, I don't think that they have examined facts as you will be doing in this case. And that's what I think makes this case certainly unique. But I think an overemphasis on federal law is simply inappropriate. We know what the statute says in Illinois, and just to make a comment about the parts of our briefs dealing with Representative Curry's statements, and I researched that when I responded to the argument. And what she said was that Illinois law would be consistent with the Equal Opportunity Employment Commission's regulations, and the regulations, I still believe at that time, said that there is strict liability. Federal courts rejected those regulations, in the Vinson case notably. But again, there are certainly policies in Illinois that would support applying strict liability to this fact situation. The Human Rights Act is there for very good reason, it's to prevent sexual discrimination and sexual harassment in the workplace. The commission reasonably read the statute to apply to this situation, and in doing so, it not only gets rid of strict liability, but it also gets rid of strict liability. And so we gave heart to the plain language of the statute, but to the policies behind the statute as well. And if you have no other questions, we would ask this court to carefully read the commission's decisions, and consider our arguments, and reverse the appellate court, and uphold the commission's decisions. Thank you. Salve Dei.